All right, Mr. Reed. May it please the court, my name is Jefferson Reed and I'm happy to represent the Grigsby's who are the appellants in this matter. This case was initiated by the United States asserting that the Grigsby's were paid a tax refund in error. That tax refund derived from Cajun Industries who claimed an R&D tax credit. After three years after the suit was filed, the United States was not required to identify the alleged error in the tax refund until the end of discovery. There was no audit of the R&D tax credit before the suit was filed. Less than one month before a jury trial which both parties agreed was appropriate for this case, summary judgment was granted on two of the requirements for the R&D tax credit. In my time before the court, I want to address two of the errors that the district court made in the summary judgment. The first of which is in finding that there was no evidence of a business component and the second of which is that the funding exclusion applied in this case. The burden of proof was on the United States in motion for summary judgment. They filed the lawsuit. They asserted that there was an error in the tax refund. They were also the movement on a motion for summary judgment and the party that has the ultimate burden of proof at trial, which all parties agreed that they did, has the burden on summary judgment. There was no administrative filings that would have done this and so the burden was on the United States. All presumptions should have been held in favor of the Grigsby's but they were not. The core question on the business component issue is whether there was evidence of the business component. The district court erred because there was evidence in the record of business component. Two U.S. tax court decisions looked at the business component element and said this is a low threshold test. That is Norwest versus Commissioner and Souter versus Commissioner. They said that all that needed to be shown for the business component is a minimal functional improvement to any one of a product, process, formula, software, invention, or technique. If there is any functional improvement to any one of those items, you have evidence of a business component. The industry developed means and methods, developed temporary structures, and developed four large structures. There were two refinery projects. One was an expansion of a refinery. There was a foundation that was built with all the underlying connections. There was a flood control system that was built. The difficulty I'm having with the taxpayers problem here is that Congress has created a credit against taxes, a very powerful incentive for research. The premise of that is that the taxpayer has incurred the expense of that. What seems plain from this record is that this is funded. That is that you never incurred that expense. You passed it on to everyone of your individual contracts out there, among other things. That is the threshold problem I have. That brings me to the second point, which is the funding exclusion. Under the funding exclusion, it is clear that even if there is an agreement or a contract for payment for the business component, that doesn't mean it is funding. The essential question when you have an for the research or is it payment for the end product or the result of the research? If it's for the end product or the result of the research, it's not funding. There are three cases that look at, there's a two-part test, first of all, that you look at to analyze funding. The first part of that test is known as the rights prong and the second part is known as substantial, I'm sorry, risk prong. The second part is the substantial rights prong. Under the risk prong, only one of the contracts was found to have failed that prong by the district court. That was the East Bank Wastewater Facility Project. That's right here five miles from this courthouse. What Cajun Industries was doing was building a retention wall that went around that was supposed to withstand hurricane Katrina level flooding events. That was a tangible item that they were building. It was under a fixed-fee contract analysis. Three courts have looked at the risk prong under a fixed-fee contract analysis. In all three cases, the risk was found to be inherently risky for the researcher or the taxpayer, and they were found not to be funded. Those cases are Fairchild Industries versus the United States, Geosyntec Consultants versus the United States out of the Southern District of Florida, and Populus Holdings versus Commissioner of the U.S. Tax Court decision. All three cases, they found it was not funded when you had a fixed-fee contract for the end result, and that's what we have here. Additionally, in the East Bank contract, there were clauses that said that if Cajun Industries could not faithfully and completely perform its conditions, that it would not be paid additional amounts, and that the client could hire an engineer to come and inspect to find out if there were any deficiencies. If there were deficiencies, Cajun Industries was required to fix it on their own dime. Under those terms, it is not funded. The District Court erred in finding the East Bank contract to be funded under those conditions. There is no case under a fixed-fee contract scenario under the risk problem that has found it not to be funded under the situation with these contract clauses. Where the District Court got off track was because it looked at change orders. Change orders that said, if you change the scope of the contract, we're going to pay you some additional amount. Obviously, if there's an additional prong or additional conditions that are being added to the contract, they're going to be paid additional because that's not what was agreed to at the outset. Counsel, do you maintain that, under Bethanyx, the Cheron, and the Claiborne contract, that the concierge retained substantial rights to the research under those contracts? Yes, they retained substantial rights to the research, and the key case for that is Lockheed versus the United States. Lockheed Martin was developing missile defense systems. The United States had every interest in making sure that information was not transferred or not sold. The Federal Circuit in 2000 looked at that and said, look, this is like a property rights, like a bundle of sticks. You may transfer the intellectual property rights. You may transfer rights, and in that case, they did transfer rights to transfer any of the information they gleaned without the United States' review or permission, but there was one right that was kept in that Lockheed Martin case. That single right was the right for Lockheed Martin to use the results of its research in its own business without having to pay the United States to do that. If you read through the contracts in the Bethanyx, Claiborne, and Cheron contracts, there's no clause that says that they are required to pay their clients for use of the research that they developed through their means and methods, through the development of temporary structures in the building of these facilities in their own business. That is a substantial right that they retained in this case, and with that, I turn back to the business component issue because there's one point that I think is critical on the business component issue that needs to be looked at. In addition to the fact that there was evidence of a business component, the court got off track in that case because it analyzed business component under, it looked at process and product and said these one cannot be the other. There's two different definitions, and under statutory construction, I see that there's two different items, and so the taxpayer has to put it into one of these two buckets. That's not the case. The Treasury Department itself looked at the business component statutory language and said under the product definition and Treasury Regulation 1.174-2A3, that's an important regulation section, as the Treasury Department looked and said the definition of a product can include a pilot model and a process and formula, invention, patent, technique, or similar property. The fact that it says or similar property is important because it says you don't have to neatly fit into one of those buckets. Something similar is sufficient. So you're maintaining that these were products? These are products, and a process can be a product as defined by the Treasury Department. So one of the things the district court looked at here, as you know, is that in your opposition to summary judgment, you abandoned any attempt to argue why the projects were products under the tax code. There was no abandonment of that argument. We were simply addressing the evidence before the court can be a process or product. Those are not mutually exclusive. The evidence supports both. Cajun Industries absolutely asserted that this is a product and would continue to assert this is a product. Did you assert that in your opposition to summary judgment? We took the arguments as presented by the U.S. So the U.S. asserted, hey, what you really have— The answer is no, you didn't. We did not relinquish that it was not a product, Your Honor. A process can be a product, and if you read the statements that are actually cited by the government or—and the court, it says we developed—Cajun Industries developed means and methods and new techniques to develop an item, which is a business component. It has components of both process and product in there. Well, how did you assert that to say, whoa, district court, this is both? The district court believed you had abandoned that argument. So what did you do to say, look over here, we are not abandoning this. This is our argument. That's your responsibility. Unfortunately, so again, we took the arguments as presented by the United States. Even assuming— What does that mean? So does that mean you didn't do anything to say, look over here, and this is still a live argument? No. Your Honor, the first time that it was raised that there was some sort of change was in the reply by the United States. So there was not an opportunity to brief that issue, but we took the arguments as argued by the United States and said, even under your arguments, United States, even under the evidence that you presented, we have evidence of a business component here, and there was. The United States evidence— But you did not assert that it was a product before the district court at that point. The language in the response to the motion does include—it does talk about products. It's—even in the briefing, in the court, it was still maintained that this was a product. There are four tangible items that were being constructed by Cajun. The evidence put forward in the statement of facts talks about those four tangible items. It talks about two flood control systems, and it talks about the refinery expansion and the site on which a refinery was to be built. Those are products. And even a process developing those products can be a product, according to the Treasury Department and the Treasury regulation. That's the guidance that applies, not the dictionary definition relied upon by the district court. But that was not argued to the district court, was it? Did you go through a brief and say, look at this regulation. Look at what we have. Here is the evidence of what we have, and we are therefore a product, and therefore we win. The evidence was put forward before the court, yes, Your Honor. And the evidence on response— Was that argument pressed? You have to press your arguments before the court so they know— The first time it was raised, Your Honor, was in reply by the United States. There was no opportunity after that to raise that issue. The United States said for the first time, it sounds like you're changing your argument because you say there's processes and a product. We said either way, it's a business component. You have evidence. It's a low-threshold test. Can you help me? I'm not sure of your answer with Judge Higginbotham about whether or not there is—about the research issue on Methonex, Chevron, and East Bank. Do you agree that wages, they're the only category of research in those contracts that Clayton claims? I'm not sure I understand the question. If you're addressing the— Research expenses. The funding question, but I'm not sure—I'm not understanding the question as to the funding that you're asking. This was not funded? Yes, there are wages that were included? Pagin was compensated for all wages under the terms of the contract, correct? Under all those projects. Yes, it was, but it was not paid for research. I don't understand, because wages is the only category of research expense that Pagin claimed, wasn't it? Yes, it was. And then if wages are compensated and wages are the only category of research, then by deduction, research is funded. I mean, I don't understand why it's not funded under that. Because the contracts are not for research. The contracts are to build tangible items, to construct tangible items. Okay. Every business component, if you look at the requirement for a business component, says it must be held for sale or lease. The fact that a business component is held for sale or even sold does not mean that it's funded. And so the fact that they were paid for wages does not mean that this was funded. Almost the majority of the R&D tax credit cases, there's going to be some sort of payment for one of the products. That's one of the requirements. The fact that wages were included and the fact that they were paid for, compensated for services in that, does not make this funded. Because they were compensated only if they delivered an end result and a product. Your initial time has expired. Thank you, Your Honor. You must have time for a vote. Thank you, Mr. Reed. Ms. Lyon. Thank you, Your Honor, and may it please the Court. My name is Kathleen Lyon and I represent the United States. The taxpayers here, as you know, lost on two independent grounds. One was the business component issue. One was the funded research issue. This Court can, of course, affirm on either ground. But if the Court has no objections, I'll begin with the business component issue. The district court here rightly granted summary judgment to the government because there wasn't a genuine issue of facts for trial. With respect to the product business component, that was the only thing that they identified during the discovery process as being the relevant business component. We put forward an argument in saying that there was no valid product business component because they didn't hold these for sale. They didn't hold them for sale because they had no ownership interest. Those facts were undisputed. In response to the motion for summary judgment, they didn't take issue with any of that. They still haven't taken issue with any of it. Then they introduced this process argument. They did that on page 2165 of the record, which is page 13 of the response. That's the beginning of their argument that says, well, even so, the Cajun developed these construction processes that was used in this trade or business, which is section 41D2B2. Whereas in discovery, it had identified the relevant business component as a product, which is 41D2B1. They spent their entire argument section of the response showing that the Cajun had engaged in qualified research with respect to the development of construction processes. The district court rightly rejected that for two reasons. Number one, it was a new product or excuse me, a new argument or a new business component altogether. Under rule 37, the district court precluded them from relying on that evidence or argument of the process. The taxpayers here don't take on rule 26E obligations. They don't take on the rule 37 argument. Then the second reason that the district court rightly rejected their process argument was they didn't even identify a new or improved construction process here that Cajun had developed while working on the various projects. One thing that they mentioned in their opening was the regulations at 1.174-283. That relates to the section 174 test, which is the first element of a qualified research test. That's not what's at issue here. We did point to the regulations in our brief and we noted that the regulations for 174 talk about product as sort of a fill-in word to encompass a lot of things, but that that has nothing to do with what they were arguing in response, which just went to a process. Let's see. On the substantial rights argument, their argument essentially boils down to if no provision expressly prohibits using the research or expressly requires the taxpayer to pay for using the research, then the taxpayer has substantial rights. Lockheed doesn't say that. Lockheed says you have to look at all of the contracts holistically. I would note that the government conceded in that case that the rights to use the research were not exclusive, but with respect to the payment in Lockheed, there was a recoupment provision that didn't clearly say whether a taxpayer had to pay or not to use the research. The court had to dig into that and decided to determine whether the recoupment was reimbursement for the research or whether it was a requirement that the researcher pay to use the research results. The point I'm trying to make here is the taxpayer is saying that you need a provision that expressly prohibits using the research or expressly requires the taxpayer to pay to use the research that the taxpayer has substantial rights. I don't think the case law bears that out. Counsel, what would you have us to do specifically? From the district court. I mean, certainly this court could do it on either the funded research or the business component grounds. If this court were to take the initial route that the district court took, which is that you've introduced a new business component here, under the balancing factors of rule 37, you're precluded from raising that argument and you've waived the product business component argument. There's nothing more to be done here that certainly would allow this court to not have to get too deeply into the research credit statute if it didn't want to. But I think that under either the funded research issue or the business component issue, the issues are actually fairly straightforward, as I think the earlier questioning bore out. If the court hasn't heard the questions. All right. Thank you, Ms. Lyon. Okay. Thank you. Reed, save some time for rebuttal. Thank you, Your Honors. One of the points I'd like to address right at the outset is I was having a little bit of difficulty understanding the question with regard to the expenses, and I want to come back and readdress that. The contracts in this case were not time and contracts. So there was no direct payment for the time that the employees were spending. It was a fixed fee contract, payment for a deliverable. And so to address your question, no, they were not being paid directly for the wages that they were being paid. They were being paid a fixed fee, and that's why, especially on the East Bank contract, it did not fail the risk prong. In addressing the business component issue to the question as whether it was argued that this was a product, the question that was to be answered in a motion for summary judgment, the United States had argued, you don't have something that you sold. And what the Cajun was responding, what the appellants were responding in this case, is what they had. They sold the processes and they sold the products, the intangible results for a fixed fee. So that's the question that was being addressed on motion for summary judgment. It was only in the reply that the United States said, wait a second, we agree with you. You've got processes, but we don't see a product. But that question really doesn't matter. The question that really matters is was there evidence in the record of a business component such that this could go and be presented to a jury to hear all the evidence? To date, not all the evidence has been presented to the ultimate decider of fact, not at the administrative level and not at the district court level. With regard to the Lockheed Martin case, I invite the court to go ahead and read that case. But absolutely, the court said that the right that was retained was the right to not have to pay the client for use in its own research. And it's very clearly stated. Again, I would emphasize the court look at Treasury Regulation 1.174-23A. The Treasury Department itself defined product as including a process and said it can be those things or any similar property, which is broad language and inclusive language. Two district courts, two, I'm sorry, U.S. tax courts have looked at it and said that it is a low threshold test and all you need to show is minimal improvement as to any one of those items. Importantly, there was a recent case in the tax court that also looked at construction services. That was Jeffrey Harper versus Commissioner. That case occurred in between the briefing schedule that we had, so it's only cited in the reply brief and it looked at construction services. There was a motion for summary judgment filed by the commissioner in that case on business component and Harper versus Commissioner has said that you still can have a business component with construction services. And with that, I turn my time over and ask the court to remand this case back to the district court, reverse and remand and allow this case to go to the jury, which it was originally designated to do. Thank you, Mr. Reed. Your case is under submission and the court will take a very brief recess before hearing the final two.